LARRY BOWYER *v.* CLARK EQUIPMENT COMPANY, CLARK EQUIPMENT CREDIT CORP. AND CLARK RENTAL CORPORATION.

[No. 2-1174A281. Filed December 8, 1976. Rehearing denied January 20, 1977. Transfer denied May 10, 1977.]

*R. M. Rhodes, Jeffry G. Price, Rhodes & Price,* of Peru, for appellant.

*Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, for appellees.

LYBROOK, J.—Defendant-appellant Larry Bowyer appeals from a trial court judgment awarding the plaintiffs the sum of $41,522.20 on an action for indebtedness. Bowyer presents the following issues for review:

(1)  Whether defendant, as a guarantor, was discharged from his guaranty obligation, as a result of plaintiffs' failure to give timely notice of the principal's default?

(2)  Whether the trial court's judgment was contrary to the law and the evidence?

The record reveals that Emry Equipment Company, Inc., (Emry) a co-defendant at trial, was in the business of selling and leasing various machinery manufactured by Clark Equipment Company. The Clark companies, plaintiffs-appellees in this action, on January 28, 1971, granted Emry Equipment Company, Inc., exclusive dealership rights to sell and lease Clark Equipment in Howard County and the surrounding area.

Emry entered into a security agreement with the various Clark companies on April 13, 1971, which gave the Clark companies a security interest in the floor-planned equipment which Emry sold and leased. The floor planning arrangement allowed Emry to obtain Clark equipment by borrowing the necessary funds from the Clark Equipment Credit Corporation. Emry would then have up to six months to pay off the account debts for the equipment purchased.

Before approving Emry for a Clark dealership, the Clark companies required that Emry obtain a guaranty agreement securing its financial stability. Larry Bowyer, the owner of Bowyer Excavating Company and previous owner of Emry Equipment Company, agreed to guarantee Emry, and on November 1, 1970, signed the following guaranty agreement:

## "GUARANTY

Clark Equipment Company          Date *November 1, 1970*
324 East Dewey Avenue
Buchanan, Michigan
Clark Equipment Credit Corporation
324 East Dewey Avenue
Buchanan, Michigan
Clark Leasing Corporation
324 East Dewey Avenue
Buchanan, Michigan
Clark Rental Corporation
324 East Dewey Avenue
Buchanan, Michigan
Gentlemen:

In order to induce any one or more of you to enter into contracts with, make a loan or loans to, or extend credit to *Emry Equipment Co., Inc.*, an *Indiana* corporation, with principal offices at *R. R. 3, Box 415A, Kokomo, Indiana* (herein called 'BORROWER') and in consideration of such entering into contracts, making of loans, or extensions of credit, the undersigned hereby, jointly and severally, absolutely guarantee the full and prompt payment of any and every indebtedness, liability or obligation (howsoever arising and of any nature whatever), which may now or

at any time and from time to time hereinafter exist or be incurred by BORROWER to any one or more of you, together with all interest thereon and reasonable attorneys' fees, costs and expenses of collection incurred by any one or more of you in connection therewith. In the event of default at any time by BORROWER, we promise to pay such indebtedness, liability or obligation on demand.

It is understood and agreed that you shall not be obligated by reason of this agreement to sell to, enter into contracts with, make a loan or loans to, or extend credit to BORROWER.

We consent that any one or more of you may, without in any manner affecting our liability and upon such conditions as any one or more of you may deem advisable: (1) Extend in whole or in part (by renewal or otherwise), modify, premature, change or release any indebtedness, liability or obligation of BORROWER or of any other person; (2) Sell, release, surrender, modify, impair, exchange, substitute, or (if a chose or choses in action) extend the duration or the time for the performance or payment of any and all property, of any nature and from whomsoever received, held by you or any one or more of you as security for the payment or performance of any indebtedness, liability or obligation of BORROWER to you; (3) settle, adjust or compromise any of your claims against BORROWER or any other person. The undersigned hereby ratify and confirm any such extension, renewal, release, surrender, exchange, modification, impairment, substitution, settlement, adjustment, compromise, and agree that the same shall be binding upon the undersigned, and hereby waive any and all defenses, counter-claims, or offsets which the undersigned might or could have by reason thereof, it being understood that the undersigned, as guarantor hereunder, shall at all times be and remain liable to you and each of you.

The undersigned hereby waive: (1) Notice of (and acknowledge due notice of) acceptance of this Guaranty by you or of the creation, renewal or accrual of any liability of BORROWER, present or future, or of your reliance upon this Guaranty (it being understood that any and every liability and obligation of BORROWER to you shall conclusively be presumed to have been created, contracted or incurred in reliance upon this Guaranty) ; (2) Demand of payment from any person indebted in any manner on or for any of the liabilities or obligations hereby guaranteed; (3) Presentment for payment of any instru-

ment of BORROWER or any other person, protest thereof, and notice of its dishonor to any party thereto and to the undersigned; (4) Any right of contribution from guarantors other than ourselves.

This Guaranty may be terminated (but only insofar as it relates to obligations of BORROWER thereafter incurred) only upon written notice to that effect delivered by the undersigned to you and duly receipted for by you; and upon any such termination, the undersigned shall nevertheless remain, jointly and severally, liable with respect to all indebtedness, liabilities or obligations created or arising theretofore to the full extent of their liability therefor as above set forth.

This Guaranty shall, without further consent of or notice to the undersigned, pass to, and may be relied upon and enforced by, any successor or assignee of you and any transferee or subsequent holder of any of said indebtedness, liabilities or obligations."

After receiving the executed guaranty agreement, Clark approved Emry's application for a dealership franchise and the companies began transacting business in January of 1971. In March of 1971, Emry, for the first time, became delinquent on its account owed to Clark in the amount of $100.00. Emry continued to be delinquent on its monthly accounts until July of 1971, when it became current. Subsequently, Emry was delinquent on every monthly account up until August 8, 1972, when Clark initiated this action against Emry and Larry Bowyer, as guarantor, for the collection of Emry's indebtedness.

Prior to the filing of the complaint, representatives from the various Clark companies attempted to assist William Emry, the president of Emry Equipment Company, Inc., in reducing the delinquent account. However, the trial testimony clearly reveals that Bowyer was not notified of Emry's delinquencies at any point prior to the commencement of this action. Bowyer was finally informed of Emry's insolvency by a Clark representative on August 15, 1972, one week after the Clark companies had filed suit.

Bowyer contends that, since he was collateral guarantor for his principal, the creditor, Clark, was obligated to give him timely notice of his principal's delinquency and default before his liability accrued. He further argues that since timely notice was not given by the creditor, his liability was discharged and therefore the trial court's judgment was contrary to the law and the evidence.

Clark responds that Bowyer was not entitled to notice of default because he knowingly and expressly waived his right to such notice.

Initially, we must determine when a guarantor is entitled to notice of his principal's default.

It is well established in Indiana that a guarantor is not entitled to notice of his principal's default when his undertaking to answer for his principal's debts and obligations is absolute. *Nading* v. *McGregor* (1890), 121 Ind. 465, 23 N.E. 283; *Furst & Bradley Manufacturing Company* v. *Black, et al.* (1887), 111 Ind. 308, 12 N.E. 504; *Smitley* v. *Nau et al.* (1968), 143 Ind. App. 113, 238 N.E.2d 681. However, when the guaranty is collateral and the liabilities guaranteed have not been created and are uncertain in amount, the creator is required to give notice of the principal's default. *Furst & Bradley Manufacturing Company* v. *Black, supra; Milroy* v. *Quinn* (1879), 69 Ind. 406.

In the case at bar, Bowyer, as guarantor, agreed to be responsible for any liabilities incurred by Emry upon its default. At the time this guarantee contract was made, Emry had not been incorporated and its liabilities to the creditor were unknown, indefinite and no specified payment date was established. Therefore, Bowyer held the status of a collateral guarantor rather than an absolute guarantor and was entitled to notice of his principal's default if in fact he did not expressly waive this right to notice.

Clark maintains that the following language found in the

executed guaranty agreement constituted an express waiver of Bowyer's right to notice of Emry's default:

\* \* \*

"The undersigned hereby waive: (1) Notice of (and acknowledge due notice of) acceptance of this Guaranty by you or of the creation, renewal or accrual of any liability of BORROWER, present or future, or of your reliance upon this Guaranty (it being understood that any and every liability and obligation of BORROWER to you shall conclusively be presumed to have been created, contracted or incurred in reliance upon this Guaranty) ; (2) Demand of payment from any person indebted in any manner on or for any of the liabilities or obligations hereby guaranteed; (3) *Presentment for payment of any instrument of BORROWER or any other person, protest thereof, and notice of its dishonor to any party thereto and to the undersigned;* (4) Any right of contribution from guarantors other than ourselves." (Emphasis added).

In interpreting the language of a guaranty contract, we must construe the contract like any other contract according to the intention of the parties. The instrument should receive a fair and reasonable interpretation to attain the parties' objectives. *Merchants National Bank & Trust Co.* v. *Winston* (1959), 129 Ind. App. 588, 159 N.E.2d 296. It is apparent in the case at bar, that the parties intended that the creditors need not give the guarantor, Bowyer, notice of his principal's dishonor or default on any instrument. However, it is not as apparent that the guarantor waived notice of default on the continuing account debt which Emry accrued.

There is no question that a guarantor may expressly waive his right to notice of his principal's default. *Young* v. *Merle & Heaney Manufacturing Company* (1915), 184 Ind. 403, 110 N.E. 669. The questionable waiver language found in Bowyer's guaranty agreement is comparable to the language found in the Uniform Commercial Code § 3-511(2)(a) and IC 1971, 26-1-3-511(2)(a) (Burns Code Ed.) which allows an accommodation endorser to expressly

waive his rights to presentment, protest and notice of dishonor of his principal's default on a negotiable instrument. However, we are not concerned with a negotiable instrument nor accommodation endorser and the Uniform Commercial Code as adopted by our Legislature is not controlling.

Clark relies upon the case of *Mid-States General Agency, Inc.* v. *Bank of Texas* (Tex. Civ. App. 1970), 450 S.W.2d 428, in support of its argument. The factual situation of *Mid-States* is similar to the one presented before us. In *Mid-States,* two individuals signed a guaranty agreement on behalf of the appellant guaranteeing the payment of credit extended by the Bank of Texas to the appellant. The guaranty agreement contained a waiver clause which specifically stated that the guarantors waived notice of default of any liability. The Court held that the guarantors had expressly waived notice of their principal's default by the terms of the guaranty agreement.

We are in total agreement with the decision and reasoning of the *Mid-States* case. However, the language of the guaranty agreement in the case at bar differs significantly from that presented in *Mid-States* in that the waiver clause does not specifically state that the guarantor waives notice of default of any liability but rather states that the guarantor waives notice of dishonor on any instrument.

While the aforementioned difference may seem to be somewhat semantic in nature, we are of the opinion that the difference is of great import. As previously stated, we are bound by the words of the guaranty contract and the reasonable intentions of the parties. We are unable to conclusively state that the language of Bowyer's guaranty agreement conveys the express intention of waiving the right to notice of the principal's default on the account debts owed to Clark.

The purpose of requiring that notice of a principal's default be given to the collateral guarantor is to enable the

guarantor to effectuate steps to protect himself from impending liability. *Hawkins* v. *Meyer-Kiser Corporation* (1928), 87 Ind. App. 664, 158 N.E. 485. When notice is required to be given to the guarantor and it is not timely presented, the guarantor will be discharged to the extent of his injury. *Furst & Bradley Manufacturing Company* v. *Black et al., supra.* If at the time of default the principal is solvent and due notice of such default is not given and the principal later becomes insolvent before notice is given, the guarantor is totally discharged from his obligations existing under the guaranty contract. See, *Gaff* v. *Sims* (1873), 45 Ind. 262; 38 C.J.S. *Guaranty* § 63.

In the present case, the record indicates that Emry was in default on its monthly account payment in June, 1971, for the amount of $25,000. Subsequently, in July of 1971, Emry became current on its account and was apparently solvent and able to pay its debts. No notice was given to the guarantor, Bowyer, of Emry's default in June, 1971. After July of 1971, Emry was delinquent on every monthly account payment and Clark finally determined in July of 1972, that Emry was insolvent and could not pay its indebtedness. No notice of Emry's delinquencies and default was given to Bowyer during this period.

We are of the opinion that Bowyer, as a collateral guarantor, was entitled to due notice of his principal's defaults in violation of the executed security agreement. We do not feel that the language of the guaranty agreement removed the creditor's obligation to tender notice when it first recognized Emry's delinquencies. Therefore, since Emry was clearly solvent at a time when payment was due and subsequently became insolvent before notice was given the guarantor, Bowyer should have been discharged from any liability under the guaranty agreement. It must therefore follow that the judgment of the trial court is not sustained by the evidence and is contrary to law.

Accordingly, the judgment of the trial court is reversed with instructions to the trial court to enter judgment consistent with this opinion.

Reversed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 357 N.E.2d 290.