**HK NEW PLAN MARWOOD SUN-SHINE CHEYENNE, LLC, A Delaware Limited Liability Company and Wholly-Owned Subsidiary of New Plan Excel Realty Trust, Inc., Appellant–Plaintiff,**

**v.**

**ONOFREY FOOD SERVICES, INC. d/b/a Piezanos Pizza and David Onofrey, Appellees–Defendants.**

No. 49A04–0508–CV–437.

Court of Appeals of Indiana.

April 27, 2006.

Rehearing Denied July 6, 2006.

Benjamin L. Niehoff, Andrews Harrell Mann Carmin & Parker, Bloomington, for Appellant.

T. Jay Curts, Erin M. Maloy, Coots Henke & Wheeler, Carmel, for Appellees.

## OPINION

SHARPNACK, Judge.

In this interlocutory appeal, HK New Plan Marwood Sunshine Cheyenne, LLC, ("New Plan") appeals the trial court's denial of its motion for summary judgment and the trial court's grant of summary judgment to David Onofrey ("Onofrey"). New Plan raises two issues, which we consolidate and restate as whether Onofrey's guaranty of the lease between Onofrey Food Services, Inc., and New Plan was enforceable. We reverse and remand.

The relevant facts designated by the parties follow. In December 1999, Simon Property Group, L.P., leased commercial space located in the Marwood Plaza Shopping Center to Little Chubby's, Inc. ("Little Chubby's"). The Lease provided, in part:

*Section 4.1.  Minimum Rent.*

Tenant covenants and agrees to pay to Landlord, without notice of demand, ... the Minimum Rent set forth in Article I, in advance upon the first day of each and every month of the Lease Term....

\*    \*    \*    \*    \*    \*

*Section 17.1.  Right to Re–Enter.*

The following shall be considered for all purposes to be defaults under and breaches of this Lease: (a) any failure of Tenant to pay any rent or other amount when due hereunder ....

\*    \*    \*    \*    \*    \*

*Section 23.1.  Waiver.*

No waiver by Landlord or Tenant of any breach of any term, covenant or condition hereof shall be deemed a waiver of the same or any subsequent breach of the same or any other term, covenant or condition.  The acceptance of rent by Landlord shall not be deemed a waiver of any earlier breach by Tenant of any term, covenant or condition hereof, regardless of Landlord's knowledge of such breach when such rent is accepted. No covenant, term or condition of this Lease shall be deemed waived by Landlord or Tenant unless waived in writing.

Appellant's Appendix at 20–38.

EIG Marwood Plaza, LLC, ("EIG") subsequently became landlord of the premises as successor in interest of Simon Property Group, L.P. On September 25, 2000, Ono-

frey Food Services became successor in interest to Little Chubby's by taking an Assignment of the Lease from Little Chubby's and subsequently occupied the leased premises. The Assignment of Lease provided, in part, that:

Tenant hereby assumes all obligations, responsibilities, liabilities and rights of the Tenant under the Lease, as of the date of this Assignment.... The Lease is hereby modified by this Assignment of Lease, but in no other manner than as set forth herein. All other provisions of the Lease shall remain in full force and effect.

*Id.* at 48. The Assignment of Lease also required Onofrey Food Services to pay a security deposit upon execution of the Assignment.

Contemporaneously with the Assignment of Lease, Onofrey, president of Onofrey Food Services, executed a Guaranty of the Lease, which provided in part:

[Onofrey] hereby guarantees to Landlord, its successors and assigns, the full and prompt payment of rent, including, but not limited to, the Fixed Minimum Rent, and any and all other sums and charges payable by Tenant, its successors and assigns, under said Lease ... and further hereby guarantees the full and timely performance and observance of all the covenants, terms, conditions and agreements herein provided to be performed and observed by Tenant, its successors and assigns; and Guarantor hereby covenants and agrees to and with Landlord, its successors and assigns, that if default shall at any time be made by Tenant, its successors and assigns, in the payment of any such Fixed Minimum Rent, and any and all other sums and charges payable by Tenant, its successors and assigns, under said Lease ..., or if Tenant should default in the performance and observance of any of

the terms, covenants, provisions or conditions contained in said Lease, Guarantor will forthwith pay such rent and other such sums and charges to Landlord, its successors and assigns, and any arrears thereof, and will forthwith faithfully perform and fulfill all of such terms, covenants, conditions and provisions, and will forthwith pay to Landlord all damages that may arise in consequence of any default by Tenant, its successors and assigns, under said Lease ....

This Guaranty is an absolute and unconditional guarantee of payment and of performance. It shall be enforceable against Guarantor ... without the necessity of any notice of nonpayment, nonperformance or nonobservance or of any notice of acceptance of this Guaranty or of any other notice or demand to which Guarantor hereby expressly waives; and Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in nowise be terminated, affected, diminished or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, or against Tenant's successors and assigns, of any of the rights or remedies reserved to landlord pursuant to the provision of the said Lease.

This Guaranty shall be a continuing guaranty and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of any assignment, renewal, modification or extension of the Lease or by reason of any extension of time that may be granted by Landlord to Tenant, its successors or assigns, or a changed or different use of the Leased Premises consented to in writing by Landlord, or by reason of any dealings or transactions or matter or thing occurring between Landlord and

Tenant, its successors or assigns, whether or not notice thereof is given to Guarantor. . . . Despite any language in this Guaranty of Lease to the contrary, Landlord and Guarantor agree this guaranty shall terminate on September 25, 2001, ("Early Termination Date"), upon which date all obligations of Guarantor to Landlord under this guaranty shall terminate, provided that Tenant at no time during the term of the Lease was in default thereunder beyond the applicable cure period, if any, as set out in the Lease.

   \*     \*     \*     \*     \*     \*

*Id.* at 54.

Although Onofrey Food Services was required to pay a security deposit at the time of executing the lease and was required to make rent payments on the first of each month, between September 2000 and September 2001, Onofrey Food Services made the payments but did not make the payments in a timely manner. However, EIG continued to accept rental payments from Onofrey Food Services and did not notify Onofrey that the Guaranty did not terminate as of September 25, 2001.

On December 12, 2002, New Plan purchased the Marwood Plaza Shopping Center and Onofrey Food Services' lease. At some point, Onofrey Food Services failed to make required payments, and New Plan provided Onofrey Food Services with notice of default on April 19, 2004. Onofrey Food Services vacated the premises on May 19, 2004.

On November 30, 2004, New Plan filed a complaint against Onofrey Food Services for defaulting on the lease and against Onofrey as guarantor of the lease. New Plan filed a motion for summary judgment regarding its claims. Onofrey Food Services and Onofrey responded by arguing, in part, that Onofrey's Guaranty of the Lease expired in September 2001, and that

New Plan waived its right to claim a default by accepting late payments from Onofrey Food Services. The trial court granted summary judgment to New Plan with respect to Onofrey Food Services, but granted summary judgment to Onofrey with respect to New Plan's claim against him on the Guaranty.

The issue is whether Onofrey's Guaranty of the lease between Onofrey Food Services, Inc. and New Plan was enforceable. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

       Resolution of this issue turns on the interpretation of the Guaranty, Lease, and Assignment of Lease. A lease is interpreted in the same way as any other contract. *Indiana Port Comm'n v. Consol. Grain and Barge Co.*, 701 N.E.2d 882, 887 (Ind.Ct.App.1998), *trans. denied.* Similarly, the interpretation of a guaranty is governed by the same rules applicable to other contracts. *Noble Roman's, Inc. v. Ward,* 760 N.E.2d 1132, 1137–1138 (Ind.Ct. App.2002). In construing a guaranty, we must give effect to the intentions of the parties, which are ascertained from the language of the contract in light of the surrounding circumstances. *Id.* at 1138.

"Generally, the nature and extent of a guarantor's liability depends upon the terms of his contract, and a guarantor cannot be made liable beyond the terms of the guaranty." *Id.* "However, the terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms." *Id.* Writings executed at the same time and relating to the same transaction or subject matter will be construed together in determining the intent underlying the contracts. *Id.* Thus, the guaranty and any other contemporaneous written agreements it incorporates must be construed together in order to determine the parties' intentions. *Id.*

New Plan argues that the trial court erred because Onofrey's Guaranty did not expire on September 25, 2001. According to New Plan, the Guaranty was extended because Onofrey Food Services defaulted by failing to pay its rent on the first day of each month between November 1, 2000, and September 2001. Additionally, New Plan argues that it did not waive Onofrey Food Services' default by accepting the late rent payments or allowing Onofrey Food Services to remain as a tenant.

Onofrey argues that the trial court properly denied New Plan's motion for summary judgment and granted summary judgment to him because New Plan, by its conduct, agreed that late rent payments were acceptable under the Lease and "is unable to claim that late rental payments constituted default under the terms of the Lease." Appellee's Brief at 5. Thus, Onofrey contends that New Plan waived its right to enforce the Guaranty after September 25, 2001. Additionally, Onofrey argues that New Plan was required to give him notice of Onofrey Food Services' default, that the conduct of the parties modi- fied the Lease provision requiring rent to be paid on the first day of each month, and that the purpose of the Guaranty was satisfied and Onofrey should not be held personally liable for the debts of Onofrey Food Services.

The Guaranty provided that Onofrey's guaranty would "terminate on September 25, 2001, . . . provided that Tenant at no time during the term of the Lease was in default thereunder beyond the applicable cure period, if any, as set out in the Lease." Appellant's Appendix at 54. Thus, the initial question is whether Onofrey Food Services was in default on the Lease prior to September 25, 2001.

■ Onofrey Food Services took assignment of the Lease on September 25, 2000. EIG was the landlord at that time. Pursuant to the Assignment and the Lease, Onofrey Food Services was required to pay a security deposit at the time of signing the Assignment and to pay rent on the first day of each month. Onofrey Food Services does not dispute that, although it paid the security deposit, it failed to make the security deposit payment at the time of signing the Assignment and that, although it paid the monthly rent, it failed to make the rent payments on the first day of each month between November 1, 2000, and September 25, 2001.

Under the Lease, the failure of Onofrey Food Services "to pay any rent or other amount when due" was a default. Appellant's Appendix at 34 (Section 17.1 of Lease). Because Onofrey Food Services failed to make timely rent payments and failed to make a timely payment of the security deposit, it was in default prior to September 25, 2001. Consequently, under the plain language of the Lease and Guaranty, Onofrey's Guaranty did not terminate on September 25, 2001.

Despite the plain language of the Lease and Guaranty, Onofrey argues that the trial court properly denied New Plan's motion for summary judgment and granted him summary judgment because EIG/New Plan waived the default by accepting the late rent payments and allowing Onofrey Food Services to remain as a tenant. Onofrey relies upon *Page Two, Inc. v. P.C. Mgmt., Inc.*, 517 N.E.2d 103 (Ind.Ct.App. 1987). In *Page Two*, the tenant, P.C. Management, refused to pay a utility assessment due under the lease but continued to pay rent to the landlord, Page Two. 517 N.E.2d at 104. Page Two later notified P.C. Management that it was in default for failure to pay the utilities and failure to provide proof of insurance. *Id.* The trial court found that Page Two waived its right to terminate the lease because it accepted monthly rental payments from P.C. Management after notice that P.C. Management was protesting and refusing to pay the amount billed for utilities. *Id.* at 105–106. On appeal, the issue was "whether the trial court erred in concluding Page Two's undisputed conduct of accepting monthly rental payments from P.C. Management after notice that P.C. Management was protesting the amount stated as due, constitutes a waiver of the contractual right to terminate the sublease." *Id.* at 106.

This court noted that waiver is "the intentional relinquishment of a known right." *Id.* at 106 n. 1 (quoting *Lafayette Car Wash, Inc. v. Boes*, 258 Ind. 498, 501, 282 N.E.2d 837, 839 (1972)). "Waiver is ordinarily a question of fact." *Id.* (citing *Salem Cmty. Sch. Corp. v. Richman*, 406 N.E.2d 269, 274 (Ind.Ct.App.1980)).

> The general rule is that if a party to a contract performs acts that recognize the contract as still subsisting, such as accepting rent payments, specific performance of the terms of the contract is waived and there can be no forfeiture. *Snyder v. International Harvester Credit Corp.* (1970), 147 Ind.App. 364, 371, 261 N.E.2d 71, 74. This rule is founded on principles of common honesty: a landlord cannot take the position a lease is valid for one purpose, e.g., collection of rent, and yet declare it invalid for other purposes. *See Waukegan Times Theatre Corp. v. Conrad* (1945), 324 Ill. App. 622, 632, 59 N.E.2d 308, 312. ("Any act done by a landlord knowing of a cause of forfeiture by his tenant, affirming the existence of the lease, and recognizing the lessee as his tenant, is a waiver of such forfeiture.") *See also* 51 C.J.S. § 117(4) (1968) ("[T]he acceptance by a landlord of rent which accrues after the breach of a condition contained in the lease generally implies a waiver of the right to declare a forfeiture of the lease and re-enter because of such breach, whatever may be the ground of forfeiture . . . ." (footnotes omitted)).

*Id.* This court ultimately held:

> The trial court reasonably determined Page Two's actions evidenced its intent to forego, rather than preserve, its right to terminate the sublease. First, upon P.C. Management's anticipatory breach by refusing to pay its share of the utilities, Page Two had the right to declare the sublease terminated at least after ten (10) days notice or after P.C. Management failed to pay any month's utility payment within thirty (30) days. Page Two did not. Second, Page Two failed or refused to consider and/or respond to P.C. Management's letters of protest which belies its argument of accommodation. In other words, Page Two's conduct in not terminating the sublease agreement and, instead, accepting rental payments, after it had explicit knowledge P.C. Management was not going to pay the billed

amounts, and in stonewalling P.C. Management's protests, constituted the waiver. This conduct was not a mere delay in the exercise of Page Two's power to terminate the lease, (which the court said is not a "persuasive consideration" in *B.J.M. Realty Corp. v. Ruggieri* (1963), 2nd Cir., 326 F.2d 281, 283) but was delay coupled with knowledge that payment was disputed and not forthcoming. This evidence reasonably supports the conclusion Page Two was intentionally relinquishing its right to terminate the sublease. The trial court did not err in determining Page Two waived its right to terminate the sublease based upon the utility dispute.

*Id.* at 107 (footnote omitted).

New Plan argues that this case is distinguishable from *Page Two* because the lease in *Page Two* did not contain nonwaiver provisions that are found in the Lease and Guaranty at issue here. We agree. The Lease here provided:

*Section 23.1. Waiver.*

No waiver by Landlord or Tenant of any breach of any term, covenant or condition hereof shall be deemed a waiver of the same or any subsequent breach of the same or any other term, covenant or condition. The acceptance of rent by Landlord shall not be deemed a waiver of any earlier breach by Tenant of any term, covenant or condition hereof, regardless of Landlord's knowledge of such breach when such rent is accepted. No covenant, term or condition of this Lease shall be deemed waived by Landlord or Tenant unless waived in writing.

Appellant's Appendix at 38. Under the Assignment, Onofrey Food Services assumed "all obligations, responsibilities, liabilities and rights of the Tenant under the Lease." *Id.* at 48. Similarly, the Guaranty provided:

Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in nowise be terminated, affected, diminished or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, or against Tenant's successors and assigns, of any of the rights or remedies reserved to landlord pursuant to the provision of the said Lease.

*Id.* at 54.

Under the clear language of the Lease and Assignment, New Plan did not waive Onofrey Food Services' default by accepting the late payments. Further, Onofrey's Guaranty was not affected by New Plan's failure to assert its rights against Onofrey Food Services. We conclude that Onofrey Food Services was in default prior to September 25, 2001, because it failed to make timely rent payments. Consequently, Onofrey's Guaranty did not expire on September 25, 2001, and New Plan did not waive its right to enforce the Guaranty.[1]

Onofrey also argues that the trial court's denial of New Plan's motion for summary judgment and the grant of his motion for summary judgment was proper because New Plan failed to give him notice of Onofrey Food Services's default. "It is well established in Indiana that a guarantor is not entitled to notice of his principal's default when his undertaking to answer for his principal's debts and obligations is absolute." *Kruse v. Nat'l Bank of Indianapolis,* 815 N.E.2d 137, 146 (Ind.Ct.App.2004) (quoting *Bowyer v.*

---

1. Onofrey also argues that the Guaranty was not enforceable because purpose of the personal guaranty expired on September 25, 2001. This argument contradicts the plain language of the Lease and Guaranty. We are constrained to apply the provisions of the parties' contracts as written.

*Clark Equip. Co.,* 171 Ind.App. 431, 357 N.E.2d 290, 293 (1976)). "However, when the guaranty is collateral and the liabilities guaranteed have not been created and are uncertain in amount, the creditor is required to give notice of the principal's default." *Id.* However, "a guarantor may expressly waive his right to notice of his principal's default." *Id.*

Here, the Guaranty provided:

> This Guaranty is an absolute and unconditional guarantee of payment and of performance. It shall be enforceable against Guarantor ... without the necessity of any notice of nonpayment, nonperformance or nonobservance or of any notice of acceptance of this Guaranty or of any other notice or demand to which Guarantor hereby expressly waives . . . .

Appellant's Appendix at 54. Consequently, Onofrey waived any notice of Onofrey Food Services' default. *See, e.g., Kruse,* 815 N.E.2d at 146 ("Kruse was not entitled to notice of SignTec's default or alleged 'misconduct' both because he was an absolute guarantor and because he expressly waived his right to such notice.").

Onofrey next argues that Onofrey Food Services was not in default because the conduct of the parties modified the provision requiring rent to be paid on the first of the month. Even if the parties did modify the Lease by their conduct, the Guaranty provided:

> This Guaranty shall be a continuing guaranty and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of any assignment, renewal, modification or extension of the Lease or by reason of any extension of time that may be granted by Landlord to Tenant, its successors or assigns, or a changed or different use of the Leased Premises consented to in writing by Landlord, or by reason of any dealings or transactions or matter or thing occurring between Landlord and Tenant, its successors or assigns, whether or not notice thereof is given to Guarantor.

Appellant's Appendix at 54. Consequently, even if Onofrey Food Services and New Plan modified the contract by their conduct, Onofrey's guaranty was not affected.

We conclude that Onofrey Food Services defaulted on its Lease prior to September 25, 2001, that New Plan did not waive the default, that Onofrey's Guaranty did not expire on September 25, 2001, that pursuant to the language of the Guaranty, Onofrey was not entitled to notice of Onofrey Food Services' default, and that even if New Plan and Onofrey Food Services modified the Lease through their conduct, Onofrey's Guaranty was not affected. Consequently, the trial court erred when it denied New Plan's motion for summary judgment and granted summary judgment to Onofrey.

For the foregoing reasons, we reverse the trial court's denial of New Plan's motion for summary judgment and the trial court's grant of summary judgment to Onofrey and remand for proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J. and BARNES, J. concur.