
FILED

Apr 18 2019, 8:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey C. Gerish
Plunkett Cooney
Bloomfield Hills, Michigan

ATTORNEY FOR APPELLEE

R.C. Richmond, III
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana Hotel Equities, LLC, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Indianapolis Airport Authority, <br> *Appellee-Defendant/Counterclaimant* | April 18, 2019 <br><br> Court of Appeals Case No. 18A-PL-769 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Heather A. Welch, Judge <br><br> Trial Court Cause No. 49D01-1707-PL-27076 |

**Baker, Judge.**

[1] Indianapolis Airport Authority (the Authority) and Indiana Hotel Equities, LLC (the Hotel), had a lease agreement (the Lease) for property on which the Hotel operated a hotel. The parties sued each other, each alleging that the other had breached the Lease and each filing a motion for summary judgment. The trial court, finding that the Hotel breached the Lease and that the Authority did not waive its ability to terminate the Lease, ruled in favor of the Authority. The Hotel appeals, arguing that the trial court erred by not directly addressing the materiality of its breach and by finding that the Authority did not waive its ability to terminate the Lease. Finding no error, we affirm.

## Facts[1]

[2] The Lease originated in 1960 for a hotel located in Indianapolis near the airport. A hotel was constructed and over the years, was managed and modified by various operators. At some point, it fell into disrepair and financial trouble.

[3] On January 6, 2016, the Lease was assigned to the Hotel. The assignment obligated the Hotel to make certain improvements and renovations to the property and to rebrand and operate it under a national chain brand name and of a certain level of quality as recognized by the hotel industry. The Hotel had until December 31, 2016, to complete the work. The renovations required by

---

[1] We heard oral argument on Thursday, March 14, 2019, at Indiana State University in Terre Haute. We thank the Indiana State Bar Association for organizing the oral argument. We also thank counsel for their informative briefs and engaging oral advocacy.

the assignment included "well-appointed rooms, decorated lobby area, sit-down restaurant offering breakfast and dinner . . . , a full-service bar or lounge area serving beer, wine and distilled liquor, fitness center and swimming pool." Appellant's App. Vol. II p. 81-82. The Lease required the Hotel to pay the Authority rent equal to the greater of $2,000/month or a certain percentage of gross receipts from room rentals and a certain percentage of the monthly gross receipts derived from the sale of alcoholic beverages.

[4] In addition, a Product Improvement Plan (PIP), which was a document between a national hotel brand and the Hotel, contained a varied list of smaller tasks to be completed, including cleaning and repairing ceiling tiles, walls, and carpet; cleaning and repairing sidewalks and parking areas; installing new artwork and decorative lighting; ensuring a certain level of internet access; implementing employee uniforms; updating the brand signage; removing an ATM; and replacing mattresses and installing new bedding.

[5] On December 31, 2016, the Hotel had neither a full-service bar or lounge area serving beer, wine, and distilled liquor, nor a swimming pool. On May 11, 2017, the Authority sent the Hotel a letter terminating the Lease, stating as follows:

> . . . As you know, Indiana Hotel Equities, LLC, failed to complete by December 31, 2016, the renovations and rebranding it was required to perform pursuant to the Lease Amendment, which failure constitutes an event of default under the Lease. As a result of said default, the Authority has the right, pursuant to Section 15 of the Lease, to cancel the Lease in its entirety, and

> notice is hereby given on behalf of the Authority that the Authority is cancelling the Lease in its entirety . . . .
>
> In the meantime, Indiana Hotel Equities, LLC, remains obligated to perform its obligations under the Lease, and the Authority hereby requests that Indiana Hotel Equities, LLC, provide the Authority with adequate assurance that it will do so. Please provide same, in writing, setting forth Indiana Hotel Equities, LLC's intentions and the actions it will take during the next sixty (60) days, so that the Authority can make appropriate plans for retaking possession of the Premises . . . .

Appellant's App. Vol. IV p. 74. Pursuant to the Lease, the Hotel had until midnight on July 11, 2017, to cure its defaults.

[6] Following this notification, the Hotel continued to make monthly rent payments at least through September 2017. The Authority uses a remittance processing service, also called a lockbox, pursuant to which rent checks from its tenants, including the Hotel, are sent to a post office box maintained by Chase Bank (Chase). Chase receives and processes the checks.

[7] On July 12, 2017, the Authority's counsel emailed Dena Marietta, its Tenant Relations & Contract Specialist, advising Marietta to "confirm that you will tell whoever receives the rent payments NOT to cash or deposit any further checks received from [the Hotel]. This is CRITICAL." Appellant's App. Vol. V p. 215 (emphasis original). Marietta then asked Elias Maqueda, the Authority's Director of Accounting, to instruct Chase not to accept any future checks sent to the lockbox from the Hotel and to return any checks to the Hotel. Maqueda called Chase and told Arina Foster, a Client Services Associate, that the

Authority wanted Chase to refuse to accept any future checks sent to the lockbox by one of the Authority's tenants and to return the checks to the tenant. Foster advised Maqueda that Chase was unable to refuse to accept a check or to return a check. The Authority has not refunded the Hotel the rent that the Hotel has paid following the termination of the Lease.

[8]     The Authority based its notice to the Hotel on the following Lease provisions:[2]

> Section 15. Remedies: Cancellation by Board. The Board shall have the right subject to the conditions herein set forth, upon written notice to the Company and to the owner and holder of a mortgage upon the leasehold estate herein created, as long as the mortgage shall remain in full force and effect, to cancel this Agreement in its entirety, upon or after the happening of any of the events set forth in this Section, subsections (a) through (f) and the lapse of time as herein set forth, such notice to be given within one year after the Board first has knowledge of the happening of the event, and to be given not less than sixty (60) days and not more than one hundred twenty (120) days in advance of the date of cancellation specified in such notice:
>
> ***
>
> (e) If the Company shall default in the performance or fulfillment of any of the terms, covenants or conditions to be performed by it hereunder.
>
> ***

---

[2] In the Lease, "Board" refers to the Authority and "Company" to the Hotel.

The Company, at any time before the rights of the Company shall have been forfeited, may pay any of the rents or other amounts due hereunder, or effect any insurance, or pay any taxes and assessments, or make any repairs or improvements, or make any deposits, or do any other act or thing required of the Company by the terms of this Lease or do any act or thing which may be necessary and proper to be done in the observance of the covenants and conditions of this Lease, or to prevent the forfeiture of this Lease.

\*\*\*

Section 19. Surrender and Holding Over. The Company covenants that at the expiration of the period for which this Lease or any option period thereof is leased or at any earlier termination under the terms hereof, it will surrender the premises and all structures and improvements thereon which by and under the terms of this Agreement are to remain on the premises as the property of the Board . . . ; and the Board shall have the right on such termination to enter upon and take possession of the premises.

\*\*\*

Should the Company hold over and continue in possession of the property after the termination of the Lease herein granted, such holding over shall be deemed merely a holding over from month to month and at the rental herein provided for, payable monthly in advance, and otherwise on the same terms and conditions as herein set forth, provided, however, that the Board saves and reserves all legal rights or recourse to remove Company from the premises upon such holding over.

\*\*\*

Section 21. Miscellaneous. . . . Neither this Lease nor any term or provision hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought. . . .

Appellant's App. Vol. II 67-69, 72-73.

[9] The Authority also based its notice on the following provision from the Lease assignment:

2. Renovations and Rebranding.

(a) [The Hotel] agrees and covenants that within thirty (30) days after the Effective Date, . . . [The Hotel] will commence with improvements and renovations, including all rooms, as specified in the Product Improvement Plan attached hereto and incorporated herein as Exhibit A. [The Hotel] shall complete all items contained in Exhibit A, including but not limited to, all individual rooms being available for occupancy on or before December 31, 2016. [The Hotel's] failure to complete all items in Exhibit A by December 31, 2016 shall constitute a default of this Lease.

(b) . . . [The Hotel] on or before December 31, 2016 shall cause the hotel to be rebranded and operated under a national chain brand name, per the terms of the Lease Agreement, . . . that meets a "three star" minimum level of quality as recognized by the hotel industry to include but not limited to well-appointed rooms, decorated lobby area, sit-down restaurant offering breakfast and dinner . . . , a full-service bar or lounge area serving beer, wine and distilled liquor, fitness center and swimming pool. . . .

*Id.* at 81-82.

[10] On July 12, 2017, the Hotel filed a complaint for damages, alleging that the Authority had breached the Lease and requesting a permanent injunction to enjoin the Authority from terminating it. On July 24, 2017, the Authority filed an answer and counterclaim, alleging that the Hotel had breached the Lease and seeking an order requiring the Hotel to vacate the premises.[3] That same day, the Authority also filed an affidavit for immediate possession, arguing that because the Hotel had defaulted on the Lease and the Authority had canceled the Lease, the Hotel no longer had a right to continue occupying the Hotel. The Authority also asked the trial court to set a hearing on that matter; the trial court scheduled a hearing for October 4, 2017.

[11] On August 23, 2017, the Hotel filed an amended answer to the Authority's counterclaim. On September 8, 2017, the Hotel filed a motion to vacate the hearing scheduled for October 4, arguing that the Authority waived any right to declare a forfeiture of the Lease by continuing to accept the Hotel's rent payments and that there was a question of fact as to whether the Hotel's alleged defaults materially breached the Lease. On September 11, 2017, the Authority filed a motion to treat the Hotel's motion to vacate as one for summary judgment; on September 21, 2017, the trial court granted that motion.

---

[3] The Authority also filed a third-party complaint against Indiana Hotel Ventures, LLC ("IHV"), which managed the Hotel. IHV is not relevant to this appeal.

[12] On October 6, 2017, the Hotel filed an amended motion to vacate hearing to be considered as a motion for summary judgment. On November 16 and 22, 2017, the Authority filed a motion opposing the Hotel's motion for summary judgment and a cross-motion for summary judgment, respectively.

[13] On January 26, 2018, a hearing took place on the two summary judgment motions. On March 28, 2018, the trial court denied the Hotel's motion for summary judgment and granted the Authority's cross-motion for summary judgment. The trial court found in relevant part that:

> 8. [The Authority] maintains it is entitled to summary judgment on its Counterclaim against . . . [the Hotel] . . . because there is no genuine issue of material fact that [the Hotel] defaulted on the terms of the Lease by failing to complete renovations and rebranding that was required, under the Lease Amendment, to be completed by December 31, 2016. Therefore, [the Authority] argues [the Authority] was entitled to terminate the Lease, did terminate the Lease, and that [the Hotel] wrongfully remains in possession of the leased premises.
>
> ***
>
> 10. The Court concludes the Lease agreement clearly outlines what constitutes a default of the Lease. [The Hotel] does not argue the terms of the Lease or Lease Amendment are ambiguous with regard to default. . . . [The Hotel] does not counter the designated evidence set forth by the [Authority] with designated evidence of its own to create "differing accounts of the truth" regarding its default. Instead, [the Hotel] argues the [Authority] waived its right to declare a forfeiture of the Lease and proceed to judgment for possession because the [Authority]

has continued to collect rent payments. Thus, the Court will proceed to address [the Hotel]'s waiver argument.

11. [The Hotel] argues the "[Authority] has waived any right to declare a forfeiture of the Lease" because the [Authority] has continued to accept and cash rent payments from [the Hotel]. Specifically, [the Hotel] maintains "[the Authority] accepted and cashed rent payments from [the Hotel]" from January 2017 through September 2017. [The Authority] argues it has "never received any checks. . . [sic] endorsed, cashed, deposited, or taken any other action whatsoever with respect to such checks that is inconsistent with its termination of the Lease."

\*\*\*

20. Like the lease in [*HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846 N.E.2d 318 (Ind. Ct. App. 2006)], the Lease at issue in this case contains a nonwaiver provision. . . . Thus, under the holding of *HK New Plan*, this Court must conclude as a matter of law that waiver did not occur here, where the Lease contained an explicit nonwaiver provision.

21. Notwithstanding the nonwaiver provision, the Court also concludes the [Authority]'s conduct after [the Hotel]'s default did not constitute waiver. . . . The undisputed evidence demonstrates the [Authority] uses a remittance processing service, commonly referred to as a lockbox, pursuant to which rent checks from all of the [Authority]'s tenants, including [the Hotel], are sent to a post office box maintained by Chase Bank. Maqueda attested that the checks [the Hotel] sent for the rent due under the Lease Amendment went to this lockbox at Chase. On the morning of July 12, 2017, [the Authority]'s counsel told Marietta that the [Authority] should not accept any future checks from [the Hotel] and should return rent checks to [the Hotel]. Marietta then asked Maqueda to instruct Chase not to accept any

future checks. However, Maqueda was told by Chase that Chase could not refuse to accept any checks unless a check comes in made payable to an unacceptable payee.

22. . . . . Thus, the Court concludes, based on the designated evidence, there is no genuine issue as to [the Authority]'s conduct regarding its acceptance of rent payments after it sent [the Hotel] the May 11, 2017 notice of termination.

23. The question remains then, whether [the Authority]'s conduct amounted to an "intentional relinquishment of its known right" to terminate the Lease. The Court concludes it did not. . . . [the Authority] did send [the Hotel], on May 11, 2017, the Termination Letter, which gave notice that [the Hotel] was in default and that [the Authority] was cancelling the Lease. Furthermore, the [Authority]'s counsel instructed the [Authority] to not accept rent payments, and the [Authority] made efforts to comply with counsel's advice. However, independent of [the Authority]'s conduct, Chase advised the [Authority] that it was unable to "refuse' [sic] [the Hotel]'s payments. The Court cannot conclude, as a matter of law, that this circumstance evidences [the Authority]'s intent to forego, rather than preserve its right to terminate the lease. . . . Thus, the Court concludes no waiver occurred here.

24. In light of the Court's conclusion that the [Authority] did not waive its right to declare default and forfeiture of the Lease, there remains no genuine issue of material fact that [the Hotel] defaulted on the Lease. [The Hotel] does not argue the Lease is ambiguous with regard to what constitutes default. Nor does [the Hotel] designate evidence to counter [the Authority]'s evidence that [the Hotel] failed to complete the items in the PIP per Section 2(a) of the Lease Amendment and failed to have a full-service bar or lounge area serving beer, wine and distilled liquor, or a swimming pool per Section 2(b). As a result, the Court concludes there is no genuine issue of material fact and

[the Authority] is entitled to judgment as a matter of law on the issue of [the Hotel]'s default. Because the Court concludes [the Hotel] defaulted on the Lease and did not cure its default within the required timeframe, [the Authority] is entitled to possession of the leased premises.

Appealed Order p. 15-16, 19-22 (some internal citations omitted). The Hotel now appeals.

# Discussion and Decision

## I. Standard of Review

[14] Our standard of review for summary judgment is well settled:

When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)

# II. Default on the Lease

The Hotel first argues that the trial court erred by allowing the Authority to declare a forfeiture based on the Hotel's defaults without first determining whether the Hotel's defaults were material.

Generally, "'an express provision in a lease that allows the breach of a covenant to work a forfeiture of the agreement, is enforced if the breach is material.'" *King v. Conley*, 87 N.E.3d 1146, 1154 (Ind. Ct. App. 2017) (quoting *Page Two, Inc. v. P.C. Mgmt., Inc.*, 517 N.E.2d 103, 107 (Ind. Ct. App. 1987)) *reh'g denied*, *trans. denied*. "While forfeitures are never favored in law, yet when by a reasonable construction, it appears that the contracting parties agreed that a forfeiture should take place, upon the failure of one of the parties to the contract to comply with a material part thereof, courts will decree a forfeiture." *Goff v. Graham*, 159 Ind. App. 324, 334, 306 N.E.2d 758, 765 (1974) (internal quotation marks and citation omitted). Our determination "depends upon whether the breach is a material one, going to the heart of the contract." *Id.* The facts of the case determine whether a total breach exists, and whether the breach is material is a question of fact for the factfinder. *Id.* We will not reweigh the evidence in reviewing the trial court's findings of fact. *Id.* at 335.

In determining whether a breach is material, the following factors may be considered:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*King*, 87 N.E.3d at 1154 (citing the Restatement (Second) of Contracts § 241 (1981)).

[18] Many cases say that the materiality of a breach of contract is a question of fact. *See, e.g.*, *Page Two*, 517 N.E.2d at 108 (finding that breach of insurance covenant was not material because sublessor was not harmed by the breach nor had it concerned itself with the matter); *see also Goff*, 159 Ind. App. at 336-37, 306 N.E.2d at 766 (finding that trial court could reasonably have found buyer's failure to insure properties was willful and therefore constituted a material breach).

[19] There is no dispute as to the material facts in this case. The Hotel did not fulfill its contractual obligation to have a full-service bar or lounge area serving beer, wine, and distilled liquor or a swimming pool by December 31, 2016. As a result, the Hotel breached the Lease. Because the Hotel breached the Lease, the Authority was entitled to give, and did give, the Hotel written notice that it was terminating the Lease effective at midnight on July 11, 2017, unless the Hotel cured its defaults by then. The Hotel did not cure its defaults within the given time period.

[20] The Hotel insists that the trial court erred by not addressing whether the Hotel's breaches were material. While we acknowledge that the trial court could have explicitly discussed the issue of materiality, the evidence supports the trial court's implicit finding that the Hotel's breaches of the Lease were sufficiently material such that there was no genuine issue of material fact. Indeed, we find that the Hotel's breaches go to the heart of the Lease. The Lease was assigned to the Hotel at least in part to establish the property as a national chain; indeed, the Lease explicitly stated that the Hotel's failure to brand the property as a national chain by December 31, 2016, would constitute a default of the Lease.

[21] To have the property rebranded and operated as a national chain of a specific quality, the Hotel was required to offer the following: well-appointed rooms; a decorated lobby area; a sit-down restaurant offering breakfast and dinner; a full-service bar or lounge area serving beer, wine, and distilled liquor; a fitness center; and a swimming pool. In other words, the Hotel had six large-scale improvements and developments to complete to ensure the property would

become a national chain brand. The Hotel did not accomplish two of these improvements that went to the heart of what the assignment of the Lease intended to achieve. And although the Hotel has continued to pay rent, as of July 12, 2017, the Hotel had not cured its defaults.

[22] The Lease required the Hotel to pay the Authority rent equal to the greater of $2,000/month or the percentages of gross receipts from room rentals and a percentage of its sales of alcoholic beverages. It is unknown how much more profit the Hotel and, in turn, the Authority, could have generated had the Hotel completed the improvements. It is possible that a swimming pool would have increased occupancy rates and that occupants would have purchased alcoholic beverages. Accordingly, it would be difficult to calculate how the Authority could be adequately compensated for the part of the benefit of the Lease of which it was deprived. This consideration further weighs toward finding the Hotel's breaches to be material.

[23] The Hotel argues that its breaches were not material because these two improvements—the full-service bar or lounge area and the swimming pool— were just a "few items" on the PIP that were not completed. Appellant's Br. p. 23. But the incomplete improvements were contained in the Lease, not in the PIP. And we see the requirements contained in the Lease—the six large-scale improvements and developments—as separate and distinct from the varied and smaller-scale tasks listed in the PIP. The Lease was a contract between the Authority and the Hotel; the PIP was a document between the Hotel and a national hotel brand that makes no mention of the improvements at issue in this

appeal between the Authority and the Hotel. We find the Hotel's argument in this respect unpersuasive.[4]

[24] In sum, the trial court did not err by finding as a matter of law that the Hotel defaulted on the Lease.

# III. Waiver of Right to Declare Forfeiture

[25] The Hotel next argues that, because the Authority continued to accept the Hotel's rent payments, the trial court erred by finding that the Authority did not waive its right to declare a forfeiture of the Lease, thereby entitling the Authority to take possession of the leased premises. The Hotel contends that the trial court should have at least found there was a question of fact on the issue.

[26] The performance of a condition precedent may be waived in many ways. *Randy Faulkner & Assocs., Inc. v. Restoration Church, Inc.*, 60 N.E.3d 274, 280 (Ind. Ct. App. 2016), *aff'd on reh'g*, 62 N.E.3d 1204 (Ind. Ct. App. 2016). Waiver is the intentional relinquishment of a known right and is ordinarily a question of fact. *HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846 N.E.2d 318, 324 (Ind. Ct. App. 2006). Generally, if a party to a contract performs acts that recognize the contract as still subsisting, such as accepting

---

[4] We note that during oral argument, the Hotel's counsel stated that "the pool never made sense." Counsel further stated that, "there is a pool, but it's covered by a banquet room, and the banquet room is used and is functional."

rent payments, specific performance of the terms of the contract is waived and there can be no forfeiture. *Page Two*, 517 N.E.2d at 106 n.1. This rule is founded on principles of common honesty: a landlord cannot take the position a lease is valid for one purpose, e.g., collection of rent, and yet declare it invalid for other purposes. *Id.*

In *HK New Plan*, the parties' lease contained the following nonwaiver provision:

> No waiver by Landlord or Tenant of any breach of any term, covenant or condition hereof shall be deemed a waiver of the same or any subsequent breach of the same or any other term, covenant or condition. The acceptance of rent by Landlord shall not be deemed a waiver of any earlier breach by Tenant of any term, covenant or condition hereof, regardless of Landlord's knowledge of such breach when such rent is accepted. No covenant, term or condition of this Lease shall be deemed waived by Landlord or Tenant unless waived in writing.

*HK New Plan*, 846 N.E.2d at 320. After the tenant failed to make required payments, the landlord filed a complaint against the tenant for defaulting on the lease; the tenant argued that the landlord waived the default by accepting the late rent payments and by allowing the tenant to remain as a tenant. This Court found that under the language of the lease, the landlord did not waive the tenant's default by accepting the late payments. *Id.* at 325.

Similarly, here, the Lease contains an explicit nonwaiver provision. Section 21 in the Lease provides that

> Neither this Lease nor any term or provision hereof may be changed, waived, discharged or terminated orally, but only by an

> instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought. . . .

Appellant's App. Vol. II p. 73. The parties could waive a term or provision of the Lease only in writing; neither of the parties did so. The Hotel contends that, because its rent checks were written instruments, the Authority waived its right to terminate the Lease by accepting these checks. Not only do we disagree that the checks constituted "instruments in writing" as contemplated by the Lease, but the record is devoid of evidence that the Authority signed the checks. The record shows instead that the Authority acted to avoid receiving the Hotel's checks. The Authority's actions show that it wanted to preserve, rather than forego, its right to terminate the Lease. *See Page Two*, 517 N.E.2d at 107 (finding that sublessor intentionally relinquished its right to terminate the sublease when it continued accepting sublessee's rental payments despite knowing that sublessee was not going to make utility payments required by the sublease and when it stonewalled sublessee's protests regarding utility payments).

[29] Moreover, the Authority was not obligated to return the payments that the Hotel continued to make after the Authority's May 11, 2017, notice of termination. The Authority had no reason to return the payments because it still had a claim of damages against the Hotel for the Hotel's defaults under the Lease.

[30]     Accordingly, the trial court did not err by finding that the Authority did not waive its right to declare a forfeiture and terminate the Lease.

[31]     The judgment of the trial court is affirmed.


Najam, J., and Tavitas, J., concur.