Jane H. COLLINS, Appellant/Cross–Appellee–Defendant/Counterplaintiff,

v.

T. William McKINNEY, Appellee/Cross-Appellant-Plaintiff/Counterdefendant.

No. 02A04–0607–CV–380.

Court of Appeals of Indiana.

Aug. 8, 2007.

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, IN, Attorney for Appellant.

John C. Theisen, Holly A. Brady, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Jane Collins ("Collins") appeals the trial court's grant of T. William McKinney's ("McKinney") motion for directed verdict as to Collins' counterclaim for breach of a written lease. The trial court concluded that even if McKinney breached the lease, Collins cannot prevail because there is no evidence to show that the breach was material or that Collins incurred any damage. Finding that there is sufficient evidence to allow a reasonable finder of fact to conclude that McKinney did breach the contract, that the breach was material, and that Collins suffered damages as a result of the breach, we reverse and remand for a new trial.

### Facts and Procedural History

Collins owns certain real estate ("the Property") in Fort Wayne, Indiana. The Property consists of two parcels of land: Parcel 1 is a car dealership, and Parcel 2 is a stone parking lot. On November 23, 1999, Collins and her late husband entered into a lease agreement ("the Prime Lease") for the Property with McKinney, whereby McKinney agreed to pay the Collinses $12,500.00 per month for five years. Section 11.1 of the Prime Lease provided, in pertinent part:

> [McKinney] may not assign or sublet the demised premises without [Collins'] prior written consent. In the event that [McKinney] shall at any time, during the term of this Lease, sublet *all or any part* of said premises or assign this Lease after first obtaining the consent of [Collins], it is hereby mutually agreed that [McKinney] shall nevertheless remain fully liable under all of the terms, covenants and conditions of this Lease. If this Lease be assigned or if the demised premises *or any part thereof* be subleased or occupied by anybody other than [McKinney], [Collins] may collect from the assignee, sublessee or occupant any rent or other charges payable by [McKinney] under this Lease, and apply the amount collected to the rent and other charges herein reserved, but such collection by [Collins] shall not be deemed a release of [McKinney] from the performance by [McKinney] under this Lease.

Appellant's App. p. 57 (emphases added). Section 14.1 of the Prime Lease provided that if McKinney violated any part of the agreement, Collins was to notify him in writing, and McKinney would have thirty days to cure the default. Section 14.1(b) provided that if McKinney failed to cure the default within thirty days, Collins reserved the right to "cancel and terminate [the Prime Lease] by notice in writing to [McKinney]." *Id.* at 58.

That same day, with Collins' written consent, McKinney entered into a sublease agreement with a conditional option to purchase ("the Sublease") with Tomkinson Chrysler Jeep, Inc. ("Tomkinson"). Tom-

kinson agreed to pay McKinney $20,000.00 per month for Parcel 1. Paragraph twenty-five of the Sublease provided, "*Subject to the terms and conditions of the Prime Lease* ... [Tomkinson] may assign this Sublease or sublet the Subleased Premises only with the prior written consent of [McKinney], which consent shall not be unreasonably withheld." *Id.* at 80 (emphasis added).

Also on that day, Collins, her late husband, McKinney, Tomkinson, and Chrysler Realty Corporation ("Chrysler") entered into an Option for Assignment of Lease ("the Chrysler Option"). Pursuant to the Chrysler Option, Chrysler could purchase all of Tomkinson's interest in the Sublease if the Property ceased to be occupied by an authorized dealer of the Daimler Chrysler Corporation. Paragraph 2 of the Chrysler Option provided, in pertinent part, "[Collins, McKinney,] and [Tomkinson] hereby agree and covenant that [the Sublease] shall not be modified, assigned or terminated by them without the prior written consent of [Chrysler]." *Id.* at 323.

On July 15, 2004, Tomkinson entered into an Asset Purchase Agreement with Glenbrook Dodge, Inc. ("Glenbrook"), whereby Tomkinson agreed to sell to Glenbrook its Chrysler Jeep dealership. Tomkinson further agreed to assign its interest in the Sublease to Glenbrook upon the closing of the Asset Purchase Agreement. The Asset Purchase Agreement did not close until February 2005. On August 1, 2004, Glenbrook took possession of Parcel 1 and began paying the $20,000.00 monthly lease payments directly to McKinney, who continued to pay Collins $12,500.00 per month pursuant to the Prime Lease. Glenbrook also agreed to separately rent Parcel 2 directly from McKinney for an additional $2,000.00 per month.

On August 19, 2004, Collins informed McKinney, via letter, that she refused to consent to the assignment from Tomkinson to Glenbrook. In addition, Collins formally notified McKinney that, by allowing Glenbrook to sublet the Property without her consent, McKinney was in default of the Prime Lease and had thirty days to cure the default by removing Glenbrook from the Property, pursuant to Section 14.1 of the Prime Lease.

On September 24, 2004, in response to Collins' letter, McKinney initiated this suit by filing a Complaint for Declaratory Judgment ("Complaint") against Collins, asking for a declaratory judgment that "Tomkinson does not need the consent of Jane Collins to any assignment of the Sublease to Glenbrook Dodge, Inc. or any other entity but only needs the consent of McKinney, whose consent cannot be unreasonably withheld." *Id.* at 49. McKinney filed a Motion for Speedy Hearing on his Complaint, which the trial court granted as to the issue of Collins' consent. The trial court entered an order providing that Collins' consent was required prior to any assignment or sublease of the Prime Lease, Sublease, or any leasehold interest flowing therefrom, including the proposed assignment from Tomkinson to Glenbrook.

Collins filed a counterclaim ("the Counterclaim"), alleging that McKinney was in breach of the Prime Lease because Glenbrook was in possession of the Property without Collins' consent, in violation of Section 11.1 of the Prime Lease. Pursuant to Section 14.1 of the Prime Lease, Collins sought to cancel and terminate the Prime Lease based on this alleged violation.[1] In his answer to Collins' Counter-

---

1. In her Counterclaim, Collins also alleged that the Prime Lease and Sublease are voidable because they are the product of "undue influence and/or constructive fraud" and "lack of consideration or failure of consideration." Appellant's App. p. 4. She also asked

claim, McKinney raised the affirmative defense that any alleged breach was not material and, accordingly, did not support termination of the Prime Lease.

A few days before trial, McKinney filed a Motion in Limine seeking an order "prohibiting Collins, her counsel or any witness from testifying to, presenting any evidence of, or in any way referring to the conduct of the parties after December 17, 2004." Appellee's App. p. 21. The trial court granted the motion.[2]

On June 14 and June 15, 2006, a jury trial was held regarding McKinney's Complaint and Collins' Counterclaim. During his opening statement, McKinney's attorney stated, "At one point in time from approximately August of 2004 to some time in February of 2005 in this little back vacant lot, Glenbrook parked cars there for awhile." Tr. p. 35. As to the nature of the relationship between Tomkinson and Glenbrook, Doug McKibben, the owner of Glenbrook, testified, "We had a Management Agreement." *Id.* at 123. However, he also testified that the "only" agreement between Tomkinson and Glenbrook was the Asset Purchase Agreement. *Id.* at 123–24.

After Collins and McKinney finished presenting their evidence, McKinney filed a Motion for Directed Verdict, which the trial court granted. On June 23, 2006, the trial court issued a written order support-

ing its decision. The order provided, in pertinent part:

Does evidence of possession of the premises, without a written sublease, constitute a subleasing of the premises in violation of the lease covenants? Ancillary to that question is: does the renting of Parcel 2 by [McKinney] to Glenbrook to park cars constitute a subleasing in violation of the lease? Assuming that the answer to one or both of these two questions is 'yes[,]' the next question is: does that violation constitute a breach which would permit the relief requested by [Collins]? The essential elements of a breach of contract action are: (1) the existence of a contract, (2) [McKinney's] breach thereof, (3) and damages. [Collins] has requested the relief of forfeiture of the lease agreement. If there is an express provision in the lease which permits the violation of a covenant to work a forfeiture of the agreement, the covenant will be enforced if the breach is material. Was there sufficient evidence which would constitute a breach and/or a material breach of the lease?

The factors to be considered in determining the materiality of a breach are found in the Restatement of Contracts, Section 275, and are restated in *Page Two v. PC Management, Inc.* One of the factors to be considered in determining the materiality of a breach is the extent

---

for an award of liquidated damages pursuant to the Prime Lease. These claims are not at issue in this appeal.

**2.** This motion arose as a result of an emergency mediation session ordered by the trial court, where the parties attempted to reach an interim resolution that would permit Tomkinson to move forward with the sale of its business to Glenbrook and would permit Glenbrook to possess the Property without subjecting Tomkinson or McKinney to a claim that either had breached the Prime Lease or

Sublease. Following the mediation, the parties executed an Estoppel Certificate and Waiver, which provided that Tomkinson assigned the Sublease to Glenbrook and that McKinney consented to the assignment. Collins signed the Waiver and agreed not to take any action to evict Glenbrook so long as Glenbrook satisfied all obligations under the lease. The parties further agreed that Glenbrook's continued possession of the premises would not be used as evidence of a breach by McKinney.

to which the "injured" party will obtain the substantial benefit which she could have reasonably anticipated. In this case, [Collins] could have reasonably anticipated $150,000.00 per year under her lease with [McKinney]. [Collins] has received $150,000.00 per year. [Collins] has presented no evidence that she has suffered any damage or that she has not received the benefit of her bargain under the original lease. [Collins] has received all of the payments due and owing under the terms of her contract. No testimony or other evidence has been presented that "she lost the ability of her freedom to contract[,]" as [she argues]. As a result, that "injury" constitutes argument and speculation, but not evidence. No evidence has been presented that [Collins] did not wish to contract with [Glenbrook], that she has lost an opportunity to contract with anyone else or that she has lost an opportunity to make additional monies. Again, these assertions were speculation and argument, but not evidence. No evidence was presented that [the Property] was damaged, devalued, or suffered from waste. The most that can be said is that now [Collins] has the additional security of another party to collect against if her lease payments are not made. Neither Tomkinson nor [McKinney] have been released from their obligations under the [Prime Lease]. Assuming a violation of the lease covenant, [Collins] has failed to produce any evidence to support an essential element for recovery under breach of contract, that being damage.

Accordingly, the Court finds that insufficient evidence has been produced which would support a claim for breach of contract. The Court GRANTS [McKinney's] Motion for Judgment on the Evidence and enters judgment for [McKinney] and against [Collins] on [Collins'] counterclaim. [Collins'] request for [termination of the Prime Lease] is DENIED. [McKinney's] breach, if any, is inconsequential and has caused [Collins] no damage. As a result, [McKinney's] Declaratory Judgment relief that no breach of the [Prime Lease] has occurred is also GRANTED. [Collins] is not entitled to any relief.

As there is no breach of contract, [Collins] is not entitled to possession of [the Property]. Judgment is entered accordingly.

Appellant's App. p. 41–43. Collins appeals the trial court's grant of McKinney's motion for directed verdict, and McKinney cross-appeals the trial court's order holding that Collins' consent was required prior to any assignment or sublease of the Sublease.

### Discussion and Decision

■ On appeal, Collins argues that the trial court erred in granting McKinney's motion for directed verdict on Collins' Counterclaim for breach of contract. Specifically, Collins contends that there was evidence to support a finding that McKinney breached the Prime Lease, that the breach was material, and that the breach damaged Collins. Collins also contends that McKinney's breach justifies termination of the Prime Lease.[3]

---

**3.** McKinney argues that "Collins is precluded from terminating the Prime Lease because she failed to satisfy a prerequisite to declaring a termination." Appellee's Br. p. 18. Specifically, McKinney contends that Collins may not terminate the Prime Lease because she did not obtain Chrysler's permission. Para-

graph 2 of the Chrysler Option provided, in pertinent part, "[Collins, McKinney,] and [Tomkinson] hereby agree and covenant that [the Sublease] shall not be modified, assigned or terminated by them without the prior written consent of [Chrysler]." Appellant's App. p. 323. McKinney asserts, "[I]f Collins termi-

The standard of review on a challenge to a directed verdict, also known as judgment on the evidence, is the same as the standard governing the trial court in making its decision. *State Farm Mut. Auto. Ins. Co. v. Noble,* 854 N.E.2d 925, 931 (Ind.Ct.App.2006), *trans. denied.* Judgment on the evidence is proper where all or some of the issues are not supported by sufficient evidence. *Id.* We will examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the nonmovant, and the motion should be granted only where there is no substantial evidence to support an essential issue in the case. *Id.* If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.; see also* Ind. Trial Rule 50(A). To recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach. *Breeding v. Kye's, Inc.,* 831 N.E.2d 188, 191 (Ind.Ct. App.2005). Here, neither party disputes the existence of a contract. Thus, our analysis will turn on the breach and damage elements.

As an initial matter, we note that even though the trial court "found" that there was no breach of contract, *see* Appellant's App. p. 43, it never actually reached the issue of breach. Rather, the trial court determined (1) that even if there was a breach, it was not material and (2) Collins could not recover for a breach of contract because she failed to establish the element of damage. *See id.* at 42–43. Because we need not reach the issue of breach if we agree with the trial court that Collins did not present sufficient evidence of damage, we first address the issue of damage.

## I. Damage

Collins contends that the trial court erred in concluding, "[Collins] has failed to produce any evidence to support an essential element for recovery under breach of contract, that being damage." Appellant's App. p. 41. McKinney argues that the trial court's finding was correct because Collins failed to produce any evidence of damage, devaluation, or waste due to the alleged breach by McKinney. In essence, McKinney asserts that Collins cannot recover for breach of contract because she failed to present any evidence of monetary damages. We disagree.

Monetary damages are not the only available remedy for a breach of contract. Here, in asking the trial court to terminate the Prime Lease, Collins is essentially asking for the remedy of rescission. Rescission of a contract is the annulling, abrogating, or unmaking of a contract. *Gabriel v. Windsor, Inc.,* 843 N.E.2d 29, 45 (Ind.Ct.App.2006). The remedy of contract rescission functions to restore the parties to their pre-contract position, that is, the status quo. *Id.* Rescission of a contract is not automatically available. *Id.* However, if a breach of the contract is a material one which goes to the heart of the contract, rescission may be the proper remedy. *Id.*

---

nated the Prime Lease with McKinney, the Sublease between McKinney and Tomkinson would also simultaneously terminate. Terminating McKinney's Prime Lease clearly would terminate or, at a minimum, modify Tomkinson's Sublease." Appellee's Br. p. 18 (citation omitted). However, to the extent that Chrysler's permission was a condition precedent to Collins' termination of the Prime

Lease, failure to perform a condition precedent is an affirmative defense that must be specifically and particularly asserted in a responsive pleading. Ind. Trial Rules 8(C) & 9(C); *United Farm Bureau Mut. Ins. Co. v. Wolfe,* 178 Ind.App. 435, 442, 382 N.E.2d 1018, 1019–20 (1978). McKinney failed to do so and therefore may not raise this argument on appeal.

■■■ One well-known authority has explained:

> The interest of a tenant is freely transferable, unless the parties to the lease validly agree otherwise. A lessor may validly impose a restriction against the assignment of the term or any part thereof by the tenant without the consent of the landlord and may even provide a forfeiture of the term as a penalty for the violation of the covenant.

49 Am.Jur.2d Landlord and Tenant § 926 (2006). Furthermore, the Indiana Supreme Court recognized long ago that the purpose of a covenant against assigning and subletting in a lease is "to reserve to the lessor the right to say who should occupy the premises." *Indianapolis Mfg. & Carpenters' Union v. The Cleveland, C., C., & I. Ry. Co.*, 45 Ind. 281, 288 (1873). McKinney's actions in this case deprived Collins of the right to say who should occupy the Property. Collins rightfully argues:

> Because of the unauthorized assignment and sublet, Collins has increased liabilities as a result of Glenbrook Dodge's possession. As an owner of the real estate liabilities resulting from Glenbrook Dodge's operations can easily flow to Collins. These liabilities would include environmental liabilities from Glenbrook Dodge's servicing of automobiles and simply premises liabilities from its operation of its business. Under the Trial Court's interpretation, Collins has lost the ability to assess and control these potential liabilities.

Appellant's Br. p. 25. The evidence is sufficient for a jury to find that Collins has been damaged. Therefore, the trial court erred in granting McKinney's motion for judgment on the evidence on the issue of damage.

## II. Breach

■■■ Having determined that Collins presented sufficient evidence to overcome a motion for judgment on the evidence on the issue of whether Collins was damaged as a result of McKinney's actions, we now consider the same question on the issue of whether McKinney's actions constituted a breach. "As a general rule, an express provision in a lease that allows the breach of a covenant to work a forfeiture of the agreement, is enforced if the breach is *material*." *Page Two, Inc. v. P.C. Mgmt., Inc.*, 517 N.E.2d 103, 107 (Ind.Ct.App. 1987) (emphasis added). McKinney argues that Collins failed to present evidence that there was a breach, but even if there is evidence of a breach, there is no evidence that the breach was material. Before addressing materiality, we must first determine whether Collins presented sufficient evidence of a breach.

### A. Was There a Breach?

■■■ Our first matter of business in this regard is to address McKinney's cross-appeal. McKinney argues that the trial court's order that Collins' consent was required prior to any assignment or sublease of the Sublease, including the proposed assignment from Tomkinson to Glenbrook, was erroneous. Specifically, McKinney contends that the Sublease does not require Collins' consent because Collins signed and gave her express consent to the Sublease and by doing so agreed that Tomkinson could assign the Sublease or sublet the premises with only McKinney's consent. Collins argues that the Sublease flows from the Prime Lease and is subject to the terms of and conditions of the Prime Lease, and, therefore, her consent is required for any assignment or sublease, including the proposed assignment from Tomkinson to Glenbrook. We agree with Collins.

Generally, construction of the terms of a written contract is a question of law, which we review *de novo*. *Berkel & Co. Contractors, Inc. v. Palm & Associates, Inc.*, 814 N.E.2d 649, 657 (Ind.Ct. App.2004). The goal of contract interpretation is to ascertain and give effect to the parties' intent. *Id.* In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Id.* Thus, we will determine the intent of the parties to a contract by the four corners of the contract. *Id.*

Section 11.1 of the Prime Lease, between Collins and McKinney, provides, in pertinent part, "[McKinney] may not assign or sublet the demised premises without [Collins'] written consent." Appellant's App. p. 57. Paragraph twenty-five of the Sublease, between McKinney and Tomkinson, provides, in pertinent part, "*Subject to the terms and conditions of the Prime Lease* ... [Tomkinson] may assign this Sublease or sublet the Subleased Premises only with the prior written consent of [McKinney], which consent shall not be unreasonably withheld." *Id.* at 80 (emphasis added). The plain and unambiguous language of the Sublease subjects the Sublease to the terms and conditions of the Prime Lease, which requires McKinney to obtain Collins' written consent before assigning or subletting the Property. Again, McKinney argues that, pursuant to the terms of the Sublease, only *his* consent was required for the assignment of the Sublease. However, while McKinney's consent is required for the assignment of the Sublease, it does not necessarily follow that Collins' consent was not also required. In other words, if Collins had veto power over the original Sublease, then why would she not have the same veto power over a sublease or assignment of that Sublease? We affirm the trial court's finding that Collins' written consent was required before any assignment or sublease of the Sublease.

Turning to Collins' arguments, we note that she alleges that McKinney breached the Prime Lease in two respects: by allowing Tomkinson to assign the Sublease to Glenbrook as to Parcel 1 and by directly subletting Parcel 2 to Glenbrook, both without Collins' written consent. We address each parcel in turn.

### 1. Parcel 1

Collins first argues that McKinney breached the Prime Lease by allowing Tomkinson to assign the Sublease to Glenbrook as to Parcel 1, the automobile dealership, without Collins' written consent. McKinney responds that there was no assignment because Tomkinson and Glenbrook merely entered into a management agreement "whereby Glenbrook would simply manage Tomkinson's affairs but Tomkinson remained liable for all activities on the premises including the Sublease." Appellee's Br. p. 20. McKinney asserts, "Simply allowing Glenbrook to manage the property does not constitute an assignment of the Sublease." *Id.* Collins argues that even if there was no formal assignment from Tomkinson to Glenbrook, there is evidence of an equitable transfer of Parcel 1 that constituted, in effect, an assignment. We agree with Collins.

In support of her equitable transfer argument, Collins relies primarily on our Supreme Court's decision in *Indianapolis Manufacturing*. There, a railway company leased real estate to Tate, who operated a lumberyard on the premises. The lease contained a provision that essentially provided that "the lessee shall neither assign the lease nor sub-let any portion of the premises without the written consent of the lessor, and that a violation of such agreement should vacate the lease." *In-*

*dianapolis Mfg.*, 45 Ind. at 287. During the lease term, Tate sold his business to Indianapolis Manufacturing and put this new company in possession of the premises. Indianapolis Manufacturing continued to use the premises as a lumberyard, paid Tate the same rent he had contracted to pay, and was obligated to comply with the other provisions contained in Tate's lease with the railway company. Our Supreme Court held, "In our opinion, the arrangement between Tate and the appellant was, in legal effect and practical operation, an assignment of the lease. It is true there was no formal assignment of the lease, but there was an equitable transfer of it." *Id.* at 288.

Here, Collins presented sufficient evidence to support a jury finding that the arrangement between Tomkinson and Glenbrook constituted an equitable assignment as discussed in *Indianapolis Manufacturing*. First, the evidence as to whether there was ever actually a management agreement between Tomkinson and Glenbrook is in conflict. At one point, Doug McKibben, the owner of Glenbrook, testified, "We had a Management Agreement." Tr. p. 123. However, he then testified that the "only" agreement between Tomkinson and Glenbrook was the Asset Purchase Agreement. *Id.* at 123–24. Furthermore, there is evidence that Glenbrook assumed Tomkinson's lease obligations for Parcel 1 in August 2004, took possession of Parcel 1, and began paying rent directly to McKinney for the parcel. Finally, there is evidence that Glenbrook began selling a different brand of cars than McKinney after taking possession of Parcel 1, suggesting that Glenbrook was in primary control. The jury could have reasonably found that the arrangement between Tomkinson and Glenbrook constituted an assignment of the Sublease.

Nonetheless, McKinney asserts that this case is distinguishable from *Indianapolis Manufacturing* because, whereas Tate immediately sold his business to Indianapolis Manufacturing, the Asset Purchase Agreement between Tomkinson and Glenbrook did not close until after December 17, 2004. McKinney relies upon the trial court's grant of his motion in limine, in which he asked the trial court for an order "prohibiting Collins, her counsel or any witness from testifying to, presenting any evidence of, or in any way referring to the conduct of the parties after December 17, 2004." Appellee's App. p. 21. McKinney argues, "Each of the witnesses testified and the documents demonstrated that the Sublease would not be assigned until the closing of the Asset Purchase Agreement, and the Asset Purchase Agreement did not close until February 2005." Appellee's Br. p. 19. McKinney maintains that by virtue of the motion in limine, any assignment that occurred after December 17, 2004, is irrelevant to Collins' breach of contract claim.

In her reply brief, Collins spends little time responding to this argument. She refers only briefly to "the arbitrary and erroneous date imposed by the Trial Court." Appellant's Reply Br. p. 4. Nevertheless, as discussed above, there is evidence that Tomkinson effectively assigned the Sublease to Glenbrook before December 17, 2004, specifically, in August 2004. As such, the question of whether Tomkinson assigned the Sublease to Glenbrook before December 17, 2004, is also one for the jury.

### 2. Parcel 2

Collins next argues that McKinney breached the Prime Lease by subleasing Parcel 2, the stone parking lot, to Glenbrook without Collins' consent. Collins notes that McKinney himself testified that he rented Parcel 2 to Glenbrook for

$2000.00 per month without Collins' consent. Collins contends, "There can be no argument that this represents a subletting in violation of Section 11.1 of the Prime Lease." Appellant's Br. p. 22. McKinney makes three responses with regard to Parcel 2.

First, McKinney contends that "the evidence regarding Glenbrook's 'use' of [Parcel 2] in exchange for $2,000.00 does not establish a sublease in violation of the Prime Lease." Appellee's Br. p. 22. However, the same rationale that applies to the assignment of the Sublease as to Parcel 1 applies to Parcel 2: even if there was no formal sublease of Parcel 2 between McKinney and Glenbrook, the evidence is sufficient to establish the existence of an equitable sublease. Glenbrook was in possession of Parcel 2 and was paying rent directly to McKinney. Whether there was a sublease between McKinney and Glenbrook as to Parcel 2 is a question of fact for the jury.

McKinney also argues that his renting of Parcel 2 to Glenbrook does not constitute a breach of the Prime Lease because he only rented one of the two parcels to Glenbrook, and the Prime Lease does not prohibit McKinney from subletting a "part" of the Property. Appellee's Br. p. 22. McKinney relies upon this Court's opinion in *Drake v. Eggleston*, 123 Ind. App. 306, 108 N.E.2d 67 (1952), *reh'g denied*. There, the lease contained a covenant that provided, "And the said party of the second part further agrees not to sublease said premises without the written consent of the party of the first part." 108 N.E.2d at 69. We held, "[A] covenant not to sub-let the premises, *as distinguished from a covenant not to sub-let the premises or any part thereof,* is not broken by a sub-letting of a part." *Id.* at 70 (emphasis added). But the instant case is distinguishable from *Drake*. Section 11.1 of the

Prime Lease, which contains the covenant against assigning and subleasing, makes explicit reference to "all *or any part* of said premises" and "the demised premises *or any part thereof.*" Appellant's App. p. 57 (emphases added). Thus, to the extent that McKinney sublet any part of the Property without Collins' consent, he did so in violation of the Prime Lease.

Finally, McKinney contends that even if he violated the Prime Lease by renting Parcel 2 to Glenbrook, Collins "failed to introduce any evidence that McKinney failed to cure Glenbrook's presence on Parcel 2 within the 30 days allowed by the Prime Lease." Appellee's Br. p. 21. More specifically, McKinney asserts, "The only evidence regarding Glenbrook's possession of Parcel 2 indicated that Glenbrook began parking cars on Parcel 2 in August 2004. There was no evidence introduced to prove that Glenbrook continued to use Parcel 2 after August 2004." Appellee's Br. p. 22 (citation omitted). Though McKinney does not cite the cases, we have previously held that in an action by a lessor for breach of a written lease, the lessor has the burden of proving that the lessee has failed to cure the alleged default. *Tastee–Freez Leasing Corp. v. Milwid,* 173 Ind.App. 675, 681, 365 N.E.2d 1388, 1392 (1977); *Kimmel v. Cockrell,* 161 Ind.App. 659, 662, 317 N.E.2d 449, 451 (1974). But here, during his opening statement, McKinney's counsel stated, "At one point in time from approximately August of 2004 to some time in February of 2005 in this little back vacant lot, Glenbrook parked cars there for awhile." Tr. p. 35. "An attorney's clear and unequivocal admission of fact during opening statement constitutes a judicial admission that binds the client[.]" 13 Robert L. Miller, Jr., *Indiana Evidence* § 801.422, at 564–65 (2d ed. 1995 & 2004 Supp.); *see also Sans v. Monticello Ins.*

*Co.,* 718 N.E.2d 814, 816 n. 3 (Ind.Ct.App. 1999), *trans. denied.* Counsel's statement establishes that Glenbrook's use of Parcel 2 extended well beyond thirty days—from August 2004 through February 2005.

There is evidence from which the jury could have reasonably concluded that McKinney's rental of Parcel 2 to Glenbrook constituted a breach of the Prime Lease. We therefore reverse the judgment of the trial court on this issue.

### B. Was Any Breach Material?

 Having determined that Collins presented sufficient evidence to overcome a motion for judgment on the evidence as to whether McKinney's actions constituted a breach, we now turn to the issue of whether there was sufficient evidence that any such breach was material. The trial court was correct in its assertion that as a general rule, an express provision in a lease that allows the breach of a covenant to work a forfeiture of the agreement is enforced if the breach is material. *Page Two,* 517 N.E.2d at 107. Collins contends that a breach of a covenant restricting assigning and subletting is always a material breach. However, we decline to hold as a matter of law that a breach of a covenant restricting assigning and subletting is always material. Whether a breach is material is generally a question of fact to be decided by the trier of fact. *Goff v. Graham,* 159 Ind.App. 324, 306 N.E.2d 758, 765 (1974). In determining whether a breach is material, the following five factors are to be considered:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Frazier v. Mellowitz,* 804 N.E.2d 796, 803 (Ind.Ct.App.2004) (adopting the Restatement (Second) of Contracts § 241 (1981)).[4] Here, the trial court only considered the first factor—the extent to which Collins would be deprived of the benefit that she reasonably expected. The trial court concluded, "In this case, [Collins] could have reasonably anticipated $150,000.00 per year under her lease with [McKinney]. [Collins] has received $150,000.00 per year. [Collins] has presented no evidence that she has suffered any damage or that she has not received the benefit of her bargain under the original lease." Appellant's App. p. 41. Based on its consideration of the first Restatement factor, the trial court did not address the other four factors. We conclude that the jury, after consideration of all five Restatement factors, could reasonably find that McKinney's breach, if any, was material.

 First, when the trial court considered the extent to which Collins will be deprived of the benefit that she reasonably

---

**4.** The trial court actually relied upon our decision in *Page Two,* wherein we cited six factors from § 275 of the *original* Restatement of Contracts. *See* Appellant's App. p. 41 (citing *Page Two,* 517 N.E.2d at 107–08). However, we have since adopted § 241 of the Restatement (Second) of Contracts, which provides the five factors listed above. *See Frazier,* 804 N.E.2d at 802–04.

expected, it only considered the monetary consequences. However, as discussed above, Collins did not solely contemplate, with respect to the Prime Lease, that she would receive $150,000.00 annually. Collins also contracted for the benefit of determining who possesses the Property, a benefit she would not receive if Tomkinson could assign the Property to Glenbrook without Collins' consent. Second, it is not at all clear that Collins can be adequately compensated for the part of that benefit of which she will be deprived—it will be difficult for her to prove any monetary loss when she is still being paid full rent. Consideration of the third factor weighs in favor of McKinney—he will suffer forfeiture if the jury finds any breach to be material. Fourth, there is conflicting evidence as to the likelihood that McKinney will cure his failure to perform, taking account of all the circumstances including any reasonable assurances. McKinney has arguably breached the Prime Lease two times—once by allowing the assignment of the Sublease as to Parcel 1 and once by subleasing Parcel 2 to Glenbrook—and he did both in the face of explicit objections by Collins. The same considerations apply to the fifth factor—the extent to which McKinney's behavior comports with standards of good faith and fair dealing. A jury could reasonably determine that McKinney did not act innocently in allowing the assignment of Parcel 1 or renting Parcel 2 to Glenbrook without Collins' consent.

There is evidence to support a jury finding that McKinney's breach, if any, was material. Therefore, the issue should have been left to the jury.

## Conclusion

We affirm the trial court's order that McKinney was required to obtain Collins' consent before any assignment or sublease of the Sublease. We reverse the trial court's grant of McKinney's motion for directed verdict on Collins' Counterclaim for breach of contract and remand for a new trial.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, SR. J., and ROBB, J., concur.