## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2018, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Alice M. Morical
Evan D. Carr
Hoover Hull Turner LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WFG-Williams & Bluitt Funeral Home, Inc. d/b/a Williams & Bluitt Funeral Home and Service Corporation International, <br><br> *Appellants-Defendants*, <br><br> v. <br><br> Bluitt & Son by Nathan L. Bluitt, Jr., Inc., a/k/a Bluitt & Sons by Nathan L. Bluitt, Jr. and Nathan L. Bluitt, Jr., <br><br> *Appellees-Plaintiffs*. | December 31, 2018 <br><br> Court of Appeals Case No. 18A-PL-819 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Gary Miller, Judge <br><br> Trial Court Cause No. 49D03-1701-PL-1374 |

**Brown, Judge.**

WFG-Williams & Bluitt Funeral Home, Inc., d/b/a Williams & Bluitt Funeral Home ("WFG"), and Service Corporation International (collectively, the "Defendants") appeal the grant of partial summary judgment in favor of Bluitt & Son by Nathan L. Bluitt, Jr., Inc., a/k/a Bluitt & Sons by Nathan L. Bluitt, Jr., and Nathan L. Bluitt, Jr. (collectively, the "Plaintiffs"). We reverse and remand.

## Facts and Procedural History

On September 8, 2011, Nathan L. Bluitt, Jr., ("Bluitt") the president and sole shareholder of Williams & Bluitt Funeral Home, Inc., sold and transferred the corporation to WFG and entered into several agreements with WFG including an Asset Purchase Agreement, a Non-Competition Agreement, and a Right to First Refusal to Purchase Agreement. The Non-Competition Agreement ("NCA") provided in part:

> Section 2. Consideration. As consideration for the covenants by [Bluitt] (separate and apart from any consideration paid for the Business on even date herewith), Corporation agrees to pay to [Bluitt] (and, subject to the terms of Section 6 of this Agreement, [Bluitt's] heirs or legal representatives), so long as [Bluitt] is not in default hereunder, the sum of $250,000.00 in 120 equal monthly installments of $2083.33. The first installment will be due and payable one month from the date hereof and thereafter on the same day of each succeeding month until all payments have been made.

Appellants' Appendix Volume III at 154.

[3] On May 2, 2017, Plaintiffs filed an Amended Complaint for Declaratory Judgment, Breach of Contract, Retaliatory Discharge, and Tortious Interference with Business Relationship. In Count V, Plaintiffs alleged breach of the NCA by Defendants' failure to make timely payments in March and April 2017. Plaintiffs asserted that Bluitt was no longer bound by the terms of the NCA and was free to act accordingly. They also asserted that they had been damaged by Defendants' breach of the NCA and had wrongfully incurred attorney fees in responding to the frivolous and groundless claims and defenses of Defendants and should be awarded damages and attorney fees.

[4] On August 17, 2017, Plaintiffs filed a motion for partial summary judgment with respect to Count V. Plaintiffs designated Bluitt's affidavit in which he stated that a March 10, 2017 payment made by Defendants via an ACH direct deposit to his bank account in the sum of $3,276.86 was late because it was not paid on March 8, 2017. He asserted that the March 2017 payment was insufficient to cover the auto allowance of $2,650 and the NCA payment of $2,083.33, which totaled $4,733.33. He also asserted that the April 14, 2017 check was late under the NCA.

[5] On September 18, 2017, Defendants filed a cross-motion for partial summary judgment with respect to Count V. Defendants designated the Affirmation of Mani Patel, the human resources director of SCI Shared Resources, LLC ("SCI"), who stated that: she was familiar with and involved in the administration of payments made by WFG, an affiliate of SCI, to Bluitt; Bluitt was entitled to one monthly check of $2,083.33 for each of seventy-two months,

for a total of $149,999.76; neither WFG nor SCI pay, nor are they obligated to pay, any auto allowance or regular salary pursuant to the NCA; Bluitt was notified of the need to convert his NCA payments to payroll in an email dated February 17, 2017 and "[d]ue to the administrative processes involved in switching Bluitt to payroll, the March 2017 NCA payment was made on March 10th" and Bluitt did not object to the February 17, 2017 email or the March 10, 2017 payment, which was cashed; the April 2017 NCA payment was paid via check dated April 14, 2017 and delivered to Bluitt via overnight carrier once Bluitt's updated address was provided; and all subsequent payments had been made on or before the 8th of each month to the address designated by Bluitt. *Id.* at 148. She also stated:

> WFG issued Check #55818 to Bluitt on July 5, 2016, and it was cashed July 8, 2016. Believing that check had been voided, WFG reissued the July 5, 2016 payment via Check #57145 on October 11, 2016. That check was cashed in addition to October's routine NCA payment, which was paid via Check #4960212 on September 30, 2016. However, because Bluitt's July 5, 2016 [check] was cashed – *not* voided – Bluitt was overpaid for the month of October 2016. *See* Check #55818, a true and accurate copy of which is attached hereto as Exhibit B; Check #57145, a true and accurate copy of which is attached hereto as Exhibit C; and Check #4960212, a true and accurate copy of which is attached hereto as Exhibit D.

*Id.* at 149. She stated that "Bluitt's NCA payments for March and April 2017, and every other NCA payment since October 2016, were therefore made approximately a month early." *Id.* at 150. Patel asserted that, "[d]espite only being owed seventy-two monthly payments of $2,083.33 for a total of

$149,999.76 at this juncture, Bluitt had actually received seventy-three monthly payments of $2,083.33 for total of $152,083.09." *Id.* at 149. She also asserted that Bluitt accepted and cashed the March 10, 2017 NCA payment which included the $2,083.33 NCA payment and a $300 car allowance payment covering the February 18, 2017 to March 3, 2017 time frame.

[6] On October 19, 2017, Plaintiffs filed a Motion to Strike Affirmation of Mansi Patel in Reply to Defendants' Cross-Motion for Partial Summary Judgment and attached an affidavit of Bluitt. On October 30, 2017, Defendants filed a Combined Motion to Strike and Response in Opposition to Plaintiffs' Motion to Strike Affirmation of Mansi Patel and Affidavit of Bluitt alleging in part that Bluitt's Affidavit in Reply to Defendants' cross-motion for partial summary judgment was untimely. The trial court denied the motion on December 19, 2017.

[7] On December 28, 2017, Plaintiffs filed a supplemental response to Defendants' cross-motion for partial summary judgment and designated another affidavit of Bluitt in which he stated that he was not overpaid or paid twice for the month of October 2016 and attached bank statements for Bluitt's account. On January 10, 2018, Defendants filed a Combined Motion to Strike and Response in Opposition to Plaintiffs' Motion to Strike Affirmation of Mansi Patel and Affidavit of Bluitt.

[8] On January 18, 2018, the trial court held a hearing. Plaintiffs' counsel commented on the check SCI allegedly re-issued in October and stated that it

was incredulous to think that a New York Stock Exchange company would not have looked at their books for four months. With respect to the checks designated by Defendants, Plaintiffs' counsel stated:

> Now, [Defendants' counsel] points out that . . . my client endorsed the check in October. Well – Mr. Bluitt has been endorsing checks on the non-compete since 2011. Heh . . . so they could take any check that they could show the front side of the check, and they can get the . . . back side of any check that Mr. Bluitt has signed, and they could say, "Here's the back of the check. He signed it." We don't know that that check, supposedly . . . and the signature is associated with that check.

Transcript Volume II at 30.

[9] On January 25, 2018, the court granted Plaintiffs' motion for partial summary judgment on Count V. Specifically, the court's order states:

> Comes now the Plaintiffs, Bluitt & Son by Nathan L. Bluitt, Jr., Inc, a/k/a Bluitt & Sons by Nathan L. Bluitt, Jr[.] and Nathan L. Bluitt, Jr., by counsel, and having filed Plaintiffs' Motion for Partial Summary Judgment on Count V of the Amended Complaint and subsequent pleadings, and Defendants having filed their Cross Motion for Partial Summary Judgment and subsequent pleadings, and the Court having heard oral argument on said Motions on January 18, 2018, and being duly advised in the premises now enters the following order:
>
> ORDERED that Plaintiffs be and are hereby granted Summary Judgment on Count V of the Amended Complaint.

Appellants' Appendix Volume II at 23 (some capitalization omitted).

[10]     Inexplicably, that same day, in conflict with the above order, the trial court granted Defendants' motion for partial summary judgment. Specifically, the order states:

> The Court **GRANTS** Defendants' Motion to Strike Plaintiffs' Supplemental Response to Defendants' Cross-Motions for Summary Judgment. Indiana law is well-settled that this Court cannot consider this late-filed summary judgment submission. *HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95 (Ind. 2008). However, even if the Court considers the statements that do not contradict Mr. Bluitt's prior affidavits and are statements of fact not law in the Supplemental Affidavit, Plaintiffs have not shown a genuine issue of material fact on the cross-motions for summary judgment. The Court did not consider conclusions of law or contradictory facts contained in that [sic] Mr. Bluitt's Supplemental Affidavit when ruling on summary judgment, as those statements are not admissible evidence. The Court also declines to consider the legal arguments in Mr. Bluitt's Supplemental Affidavit or enter the proposed orders submitted by Plaintiffs based on those arguments regarding striking all or portions of the non-competition agreement as unreasonable restraints or restrictions. Those issues are not properly before the Court on a motion and the record does not allow the Court to rule on those issues at this time.

> No genuine issues of material fact exist on the parties' cross-motions for summary judgment on Count V of the Amended Complaint. Defendants have established that they made an extra payment to Mr. Bluitt in October 2016; therefore, none of the payments to Mr. Bluitt pursuant to his non-competition agreement were late, and the non-competition agreement was not breached. Because the Court finds that Defendants established they did not breach the noncompetition agreement, it is not necessary for the Court to consider the issues of whether a few day [sic] delay in payments would be material or whether waiver

or estoppel would apply due to Mr. Bluitt's acceptance of the alleged late-payments.

The Court hereby **GRANTS** Defendants' Cross-Motion for Partial Summary Judgment and **DENIES** Plaintiffs' Motion for Partial Summary Judgment on Count V of the Amended Complaint.

**IT IS HEREBY ORDERED** that Judgment is entered in favor of Defendants and against Plaintiffs on Count V of Plaintiffs' Amended Complaint because Defendants did not breach the non-competition agreement and Mr. Bluitt remains bound to the parties' non-competition agreement.

Appellants' Appendix Volume IV at 158-159.

On January 26, 2018, Defendants filed a Motion Seeking Clarification or, Alternatively, Reconsideration of Court's Orders on Parties' Cross-Motions for Partial Summary Judgment. Plaintiffs also filed a motion seeking clarification.

On March 5, 2018, the court entered an order confirming the judgment in favor of Plaintiffs on Plaintiffs' motion for partial summary judgment and vacated the January 25, 2018 order granting Defendants' cross-motion for partial summary judgment. On May 11, 2018, this Court granted Defendants' motion to accept jurisdiction of an interlocutory appeal.

## *Discussion*

Before addressing the issues raised by Defendants, we note that Plaintiffs did not file an appellees' brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments, and we apply a less stringent

standard of review; that is, we may reverse if the appellant establishes *prima facie* error. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Wright v. Wright*, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Questions of law are still reviewed *de novo*. *McClure v. Cooper*, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

[14] We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997), *trans. denied*. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

Defendants argue that summary judgment in favor of Plaintiffs was improper because a genuine issue of material fact exists as to whether they materially breached the NCA. They assert that they designated evidence disputing Bluitt's claim that he received late NCA payments. They assert that, even if the payments had been late, a question of fact exists as to whether that constitutes a material breach. Defendants also contend that a question of fact exists as to whether Bluitt waived the right to declare a breach or is estopped from declaring a breach.

As detailed above, Bluitt's affidavit and Patel's affirmation as well as the copies of the checks and bank statements present a factual issue as to whether Defendants made the required NCA payments.[1] To the extent Defendants assert that, even if the payments had been late, a question of fact exists as to whether that constitutes a material breach, we have previously observed that an injured party is not discharged from the party's duty to perform unless the breach is material. *See Frazier v. Mellowitz*, 804 N.E.2d 796, 803 (Ind. Ct. App. 2004) ("[U]nder the Restatement (Second) of Contracts, an injured party is not discharged from his duty to perform unless (1) the breach is material, and (2) it is too late for performance or an offer to perform to occur."). The Indiana

---

[1] Defendants assert that a question of fact is highlighted by Plaintiffs' evidence designated in reply and note that some of Plaintiffs' designated evidence was submitted a day after the deadline for doing so expired. Defendants assert that, "[a]lthough not the subject of this appeal, the trial court erred to the extent that it considered Bluitt's motion to strike, or treated the affidavit as having evidentiary value." Appellants' Brief at 21 n.4. Even assuming that all the designated evidence presented by Plaintiffs was properly considered, we cannot say that Plaintiffs demonstrated the absence of a question of fact.

Supreme Court has held that "[w]hether a breach is material is generally a question of fact to be decided by the trier of fact." *State v. Int'l Bus. Machines Corp.*, 51 N.E.3d 150, 158 (Ind. 2016) (quoting *Collins v. McKinney*, 871 N.E.2d 363, 375 (Ind. Ct. App. 2007) (citing *Goff v. Graham*, 159 Ind. App. 324, 306 N.E.2d 758, 765 (1974))). The Court held that "[a] material breach is often described as one that goes to the 'heart of the contract.'" *Id.* at 158-159 (citing *Collins*, 871 N.E.2d at 370). The Indiana Supreme Court has stated:

> Under the common law, when determining whether a breach is material, Indiana courts generally apply the factors articulated in the Restatement (Second) of Contracts § 241 (1981):
>
> > (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> >
> > (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> >
> > (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> >
> > (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> >
> > (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* at 160 (citing *Collins*, 871 N.E.2d at 375 (citing *Frazier*, 804 N.E.2d at 803)). In light of the designated evidence, we conclude that whether any breach was material and thus excused Bluitt from performing his obligations is a question

of fact inappropriate for summary judgment. *See W. Am. Ins. Co. v. Cates*, 865 N.E.2d 1016, 1022 (Ind. Ct. App. 2007) ("Whether West Am's delay was unreasonable . . . and a material breach of the contract is a question of fact. Material questions of fact are not appropriate for resolution by summary judgment. Accordingly, we conclude that the trial court appropriately denied West Am's motion for summary judgment because there was a material issue of fact regarding whether West Am materially breached its contract with the Cates family in failing to pay under the terms of the insurance policy.") (citations omitted), *trans. denied*.[2]

## Conclusion

For the foregoing reasons, we reverse the trial court's grant of Plaintiffs' motion for partial summary judgment and remand for proceedings consistent with this opinion.

Reversed and remanded.

Bailey, J., and Bradford, J., concur.

---

[2] Because we reverse and remand on this basis, we need not address Defendants' arguments regarding waiver and estoppel.